## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DONALD J. RUSSELL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19CV00280 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **NORTHERN MANAGEMENT** | ) | By: James P. Jones |
| **SERVICES, INC.,** | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Matthew W. Broughton, Travis J. Graham, and Caley A. Degroote, GENTRY LOCKE, Roanoke, Virginia, for Plaintiff; Heather S. Deane, BONNER KIERNAN TREBACH & CROCIATA, LLP, Washington, D.C., for Defendant.*

Plaintiff, a workman at a federal building, was seriously injured when he fell through a collapsing grate allegedly maintained by the defendant and sued in this court. The defendant did not respond after proper service, was found in default and did not appear, and the plaintiff was awarded substantial damages. The defendant now seeks relief from the resulting default judgment pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. Based on the undisputed facts, I find that the defendant has not shown excusable neglect sufficient to escape the judgment against it.

## I.

The underlying claim arose on November 18, 2017, when the plaintiff, Donald J. Russell, was working at the Richard H. Poff Federal Building (Poff Building) in

Roanoke, Virginia.  An employee of Fire and Life Safety America, the plaintiff was assisting with the testing and maintenance of the Poff Building's fire suppression system.  As part of this work, the plaintiff ran a firehose over a raised, concrete structure topped with metal grates.  The plaintiff stepped atop the structure to straighten the hose, which caused one of the grates to collapse.  Consequently, the plaintiff fell over 20 feet onto the concrete floor of the access well below, causing him to suffer severe injuries.

The plaintiff submitted a claim to the Government Services Administration (GSA), seeking damages from the United States in the amount of five million dollars for his injuries.  GSA denied the plaintiff's claim in a February 25, 2019, letter to the plaintiff's counsel.  GSA contended that the grating, as well as all operations and maintenance of the structural components of the Poff Building, were handled by a private company, Northern Management Services, Inc. (Northern Management), the current defendant, and therefore the independent contractor and discretionary function exceptions to the Federal Tort Claims Act barred any claim against the United States.

On April 2, 2019, the plaintiff filed his Complaint against Northern Management, contending that the grates were unsafe to walk on and that there was a failure to warn of that fact, or to place barriers to prevent their use.  Compl. §§ 28–

-2-

30, ECF No. 1.[1]  The Summons and Complaint were duly served on the defendant's registered agent, Corporation Service Company (CSC), on May 29, 2019.  Return on Service, ECF No. 11.

CSC transmitted these papers by email to Northern Management on May 31, 2019.  Pl.'s Resp. Ex. B, ECF No. 81-2.  Teri Smith, an officer of Northern Management, in turn forwarded the documents via email the same day to John Deshon, president of Northern Management; Kent Malone, vice president; Holly Banning, payroll/HR manager; as well as to Eric Zimmerman of Northern Management's insurance broker, Propel Insurance Company (Propel).  *Id*.  In her forwarding email, Smith stated that she had created a folder for the incident under "Liability Claims." *Id*.  Following this email, the defendant made no further inquiries of either Propel or Northern Management's liability insurance company, Zurich North America (Zurich), and Northern Management's president Deshon simply assumed that Propel had forwarded the process to Zurich as was allegedly standard practice.  However, Zurich did not receive notice of the suit, and legal counsel was not retained to represent the defendant in the action.

---

[1]    The plaintiff also initially named the United States as a defendant, but later dismissed that claim, leaving only the state law cause of action against Northern Management, with subject-matter jurisdiction based upon diversity of citizenship and amount in controversy.  28 U.S.C. § 1332(a).

There being no appearance by the defendant, the plaintiff moved for entry of default on June 24, 2019, and the clerk entered the default on June 26, 2019. On November 5, 2019, a magistrate judge presided over a jury trial on damages, at which the plaintiff introduced evidence of past medical expenses of $340,608.05, and anticipated medical expenses of $1,599,845. In addition, he showed lost wages of $103,503.80 and future lost earnings of $858,710. The jury awarded the plaintiff six million dollars. Judgment was entered on November 7, 2019. A few days later, on November 12, 2019, the plaintiff moved to alter the judgment to match the amount of the Complaint's ad damnum of five million dollars, which motion was granted. On the plaintiff's motion, the court referred the case to the magistrate judge for a report and recommendation, which was issued on May 4, 2020, and recommended entry of a judgment in plaintiff's favor of five million dollars plus pre-judgment interest. The court approved the report and recommendation and final judgment was entered on May 15, 2020, and the case closed. J., ECF No. 63.

Plaintiff's counsel gave notice of the judgment to the defendant by letter to its registered agent dated June 22, 2020. Northern Management filed the present Motion to Vacate Default Judgment on July 17, 2020.

II.

Federal Rules of Civil Procedure permit the court to vacate a final judgment under certain circumstances. ("[T]he court may relieve a party or its legal representation from a final judgment, order, or proceeding . . . ."). Fed. R. Civ. P. 60(b) To establish it is entitled to relief from default judgment, a moving party must satisfy three threshold conditions, as well as at least one of the six grounds of relief stated in the Rule. *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987). Specifically, the moving party must establish that (1) the motion for relief is timely, (2) it has a meritorious defense to the action, and (3) the non-moving party will not be unfairly prejudiced.[2] *Id.* If the moving party can establish these conditions, then it must also establish the existence of at least one of the following:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

---

[2] Some Fourth Circuit case law also includes a fourth threshold requirement — exceptional circumstances. *See Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993).

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  In assessing motions for Rule 60(b) relief, district courts have also considered whether the moving party has a history of dilatory action and whether there are less drastic sanctions available.  *See, e.g.*, *U.S. Foodservice, Inc. v. Donahue*, 764 F. Supp. 2d 816, 820 (S.D. W. Va. 2011).

Rule 60(b) should be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969).  Notably, the Fourth Circuit has taken an "increasingly liberal view of Rule 60(b)" when default judgements are involved. *Augusta Fiberglass Coatings, Inc., v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988) (per curium).  Nevertheless, the Rule is not toothless. *See Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973) (stating that case law should not "be read to imply that a District Court will or should always grant relief from a default . . . judgment at the behest of a Rule 60(b)(1) movant").  Courts must balance this call for liberal construction along with the need for finality. *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 (4th Cir. 1997).  While default judgments are not favored, "of equal importance" is the notion that parties "should not be permitted to flout . . . time limitations with impunity." *Trueblood v. Grayson Shops of Tenn., Inc.*, 32 F.R.D. 190, 196 (E.D. Va. 1963).  Moreover, parties seeking Rule 60(b) relief "must

clearly establish the grounds therefor." *In re Burnley*, 988 F.2d 1, 2 (4th Cir. 1992) (internal quotation marks and citations omitted).

III.

The defendant contends it has satisfied the Rule 60(b) threshold requirements, including having meritorious defenses to the duty, breach, and causation elements of the plaintiff's negligence claim.  The defendant has the burden of demonstrating it has a meritorious defense.  *See Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 253 n.8 (4th Cir. 1974) ("[W]e are of the view that a party satisfies his burden of demonstrating a meritorious defense when he introduces uncontradicted testimony which, if believed, establishes facts constituting a meritorious defense."). Here, the defendant's "proffer of evidence," *Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 812, regarding its alleged defenses consists only of counsel's argument on brief,  the accident report attached as an exhibit to its reply brief, and a declaration from the defendant's president confirming that the defendant serves as the operations and maintenance contractor for the Poff Building.  At least two of the defendant's asserted defenses rely purely on conjecture — specifically, the possibility that something "may have happened to the grate" that could have severed the causal chain and the bare assertion that the plaintiff may have been aware that the grates were faulty.  Def.'s Mem. Supp. Mot. 16, 18, ECF No. 73.  Consequently, I am not convinced that the defendant has done more than suggest these possible defenses in

a conclusory manner.  *See Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251–52 (4th Cir. 1967) ("[T]he defendant did no more than allege in conclusory fashion that it had a meritorious defense.  It presented no statement of underlying facts to support this conclusion to enable the court to appraise the merits of the claimed defense.").

Similarly, it contends, again without supporting facts, that it had no actual or constructive knowledge of any defect in the defective grate in question.

Finally, it argues that as a legal matter it had no duty to the plaintiff, since it was not an owner of the property nor was the plaintiff a party to its contract with GSA.  But these defenses appear weak, in light of the duties of Northern Management as shown by the GSA contract, filed by the United States in the case when it was a party.

Nevertheless, even if I were to find that the defendant has met its minimal burden of having a meritorious defense, it's conduct fails to satisfy the asserted Rule 60(b) ground for relief.[3]

The defendant seeks relief from judgment pursuant to Rule 60(b)(1) for excusable neglect.  Relief under Rule 60(b)(1) falls within a district court's discretion.  *See, e.g.*, *Universal Film Exchs., Inc.*, 479 F.2d at 576 ("When a Rule 60(b)(1) motion is made, the District Court denies or grants relief based on its

---

[3]  The other threshold requirements do not appear to weigh against the defendant.

discretionary appraisal of the particular facts of the case."). The Supreme Court has referred to excusable neglect as "elastic" and has acknowledged the phrase may encompass inadvertent delays "not limited strictly to omissions cause by circumstances beyond the control of the movant." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The phrase may include missed deadlines attributable to negligence. *Id.* at 394.

Nonetheless, not all negligence is excusable. *See Heavy Machs., Inc. v. PBS Coals*, *Inc.*, No. 92-2316, 1993 WL 290892, at *1 (4th Cir. July 29, 1993) (unpublished) ("[A] party must do more than assert neglect to justify relief."). The moving party must still establish it has an acceptable excuse. *Park Corp.*, 812 F.2d at 896–97. Importantly, the Rule's excusable neglect standard "is a more onerous standard" than the good cause standard applicable to motions to set aside entries of default. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010). Moreover, when the party itself is at fault for missing a deadline that results in default judgment, the court's interests in finality and efficiency "dominate and the party must adequately defend its conduct in order to show excusable neglect." *Augusta Fiberglass Coatings, Inc.,* 843 F.2d at 811; *see Heyman*, 116 F.3d at 94 (highlighting that "when dismissal is caused by the negligence of a party, vacatur is not granted as freely" as it is when a party is blameless and an attorney is at fault).

While there are no clearly defined parameters for what constitutes an acceptable excuse for delay, see *Trueblood*, 32 F.R.D. at 195 (noting that "[t]here is no uniform interpretation of what constitutes 'mistake, inadvertence, surprise, or excusable neglect'"), case law does provide some context. "'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. Dupont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996) (discussing excusable neglect in the context of Federal Rule of Appellate Procedure 4(a)(5)). "A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1)." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 413 (4th Cir. 2010) (reviewing the district court's denial of a motion to vacate summary judgment). In the end, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including the danger of prejudice, the length of delay and the potential impact on judicial proceedings, the reason for delay, "including whether it was within the reasonable control of the movant," and whether the moving party acted in good faith. *Pioneer Inv. Servs., Co.*, 507 U.S. at 395. "The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file . . . ." *Thompson*, 76 F.3d at 534 (discussing an untimely filing of appeal). Thus, the issue here is whether the relevant circumstances, especially the reason for the defendant's failure to respond, render the defendant's neglect

excusable. *See Skinner v. First Union Nat'l Bank*, No. 98-1627, 1999 WL 261944, at *2 (4th Cir. May 3, 1999) (unpublished) (noting that the *Pioneer* factors have general application beyond bankruptcy and may be applied by courts in considering Rule 60(b) motions). I find they do not.

It has been found that a party's failure to follow up with its insurer does not constitute the type of neglect that is excusable under Rule 60(b)(1). In *Lewitzke v. W. Motor Freight*, "[the defendant] allegedly emailed the summons and complaint, received no response from [its insurer], and made no further inquiry or follow up into the matter." No. 9:06-0577-PM., 2006 WL 2345986, at *7 (D.S.C. Aug. 11, 2006). Consequently, the court found the defendant was not entitled to relief from default judgment under Rule 60(b)(1). *Id.* As the defendant highlights, *Lewitzke* is not entirely analogous to the matter at hand because the defendant in that case failed to provide the "court with any proof that it actually emailed the summons and complaint to [the insurer] for processing." *Id.* Here, the defendant has offered evidence that it did at least include its broker on an email containing the relevant suit papers. Nevertheless, this distinction is not dispositive. The *Lewitzke* court noted that the "[m]ore important[]" consideration was that the defendant had failed to show it "ever picked up the phone to call [its insurer] to ensure that it received the summons and complaint, or even to notify it of the existence of the summons and complaint. Additionally, it d[id] not appear that [the defendant] ever picked up the

phone to see whether the summons and complaint were answered." *Id*.[4]  Here, like

in *Lewitzke*, the defendant failed to follow up with its insurer to confirm it was

pursuing its defense.  This failure spanned the course of one year, despite the fact

that multiple responsible officers of the defendant knew of the accident and the suit.

This complete lack of follow-up for such a substantial amount of time weighs

heavily against relief.

Moreover, the defendant's reliance on its alleged standard practice does not

render its neglect excusable.  The existence of an excuse does not automatically

entitle a defendant to relief.  *Heyman*, 116 F.3d at 97 (finding that the district court

did not abuse its discretion in refusing to accept the defendant's proffered excuses).

Moreover, the existence of a procedure does not necessarily excuse a defendant's

conduct if the procedure itself is inadequate.  *See Nat'l R.R. Passenger Corp. v.

Patco Transp. Inc.*, 128 F. App'x 93, 95 (11th Cir. 2005) (unpublished) (explaining

that the defendant should have had "an adequate procedure for following up with its

insurance company to inquire as to whether a complaint had been received and was

being pursued").  Although "[t]he best of systems sometimes suffers an occasional

---

[4]   The court's "more importantly" language comes in the section where it analyzes the facts under the more lenient Rule 55(c) "good cause" standard, not under Rule 60(b). *See id.*  Nevertheless, the court still highlights the defendant's lack of further inquiry in its Rule 60(b) analysis.  *See id.*  ("On this record it appears that [the defendant] allegedly emailed the summons and complaint, received no response from [the insurer], and made no further inquiry or follow up into the matter, until learning some five months later that a law firm had been assigned as defense counsel.").

breakdown" and such breakdowns should probably be deemed excusable, *Park Corp.*, 812 F.2d at 898 (Haynsworth, J., concurring), I do not consider the defendant's email procedure to be an example of "the best of systems," even if it has never failed the defendant before.

The procedure, as exemplified in this matter, is inadequate for several reasons. For example, the defendant's email did not specifically address the broker, but merely included the broker's Eric Zimmerman in the list of recipients along with officers and employees of the defendant. The email contained no specific requests other than to "[p]lease see the attached." Def.'s Reply Ex. C, ECF No. 82-3. Additionally, Zimmerman appears to be a sales executive for Propel. Pl.'s Resp. Ex. E, ECF No. 81-5. The defendant presents no evidence that Zimmerman had any role or responsibility in handling claims or lawsuits for clients. The defendant also offers no evidence that Zimmerman or anyone else from Propel confirmed receipt of email to justify the defendant's assumption "that its broker had properly submitted the claim to [the defendant's] insurer and that its insurer had appointed counsel to defend [the defendant]" in this case. Def.'s Mem. Supp. Mot. 10, ECF No. 73. A mere assumption based solely on past conduct is insufficient. *See U.S. Foodservice, Inc.*, 764 F. Supp. 2d at 820 ("A party may not simply forward legal papers to counsel used in the past and then assume that such forwarding will be sufficient to excuse the duty to timely respond to a lawsuit."). Finally, the fact that the defendant is a

sophisticated corporate party that has been involved in numerous other legal matters also weighs heavily against relief.[5]

In sum, the reason for the defendant's failure to appear, the inexplicit email and the lack of proof that the broker confirmed receipt of the email, in conjunction with the defendant's complete lack of follow-up until a year later, constitutes an absence of due diligence that I cannot find to be excusable. Considering all the circumstances set forth above, including the reason for the defendant's failure to appear, the fact that the defendant itself was at fault, and the "judicial system's need for finality and efficiency in litigation[,]" *Augusta*, 843 F.2d at 811,[6] I find that the defendant is not entitled to relief under Rule 60(b)(1).

## IV.

For the reasons set forth above, it is **ORDERED** that the Motion to Vacate Default Judgment, ECF No. 73, is DENIED.

---

[5]  Northern Management is a "leading provider of Maintenance and Construction Services for the United States Government." Pl.'s Resp. Ex. D, ECF No. 81-4. It currently has 37 such contracts across 19 states. *Id.* It provides contracts for many government agencies, including GSA, the U.S. Postal Service, and several branches of the military, among others. *Id.* The fact that the defendant has never defended a lawsuit in this district is obviously irrelevant. Def.'s Reply Ex. A, ECF No. 82-1.

[6]  The other relevant Rule 60(b) and excusable neglect considerations, including prejudice, good faith, and the history of dilatory action, do not appear to weigh against the defendant.

ENTER:   October 27, 2020


/s/  JAMES P. JONES

United States District Judge